IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-00868-PAB

GREGORY KEITH WIEBERG,

    Applicant,

v.

ARISTEDES ZAVARAS, Executive Director, Colorado Department of Corrections, and THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254

---

This matter comes before the Court on Applicant Gregory Keith Wieberg's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 4)[1], which the Respondents answered (Docket No. 22). Applicant filed a traverse (Docket No. 23). Having considered the same, along with the pertinent portions of the state court record (Docket No. 27), the Court concludes that the Amended Application should be denied.

I.    Background

Applicant was convicted by a jury in the Mesa County District Court ("trial court") of distribution of a controlled substance, possession with intent to distribute a controlled substance, possession of drug paraphernalia, being a special offender, and violation of

---

[1] Because Applicant appears *pro se*, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, the Court does not serve as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

bail bond conditions. He was sentenced to thirty years in prison. The judgment of conviction was affirmed on direct appeal. *See People v. Wieberg*, No. 06CA1892 (Colo. App. Dec. 20, 2007). On April 7, 2008, the Colorado Supreme Court denied Applicant's petition for writ of certiorari on direct appeal. On May 7, 2008, Applicant filed a post-conviction motion for sentence reconsideration that was denied by the trial court on May 28, 2008. The Court received the instant action for filing on April 7, 2009.

Applicant then filed an amended application on April 27, 2009, arguing that: (1) the trial court erred in denying his motion to suppress evidence seized from his home in violation of his Fourth Amendment rights and in failing to suppress custodial statements obtained in violation of his Fifth Amendment rights; and (2) the trial court erred in denying his motion to preclude evidence that his son was the focus of a manhunt by law enforcement personnel.

On May 1, 2009, Magistrate Judge Boyd N. Boland ordered the Respondents to file a pre-answer response limited to addressing the issues of timeliness and/or exhaustion of state court remedies. After receiving an extension of time, Respondents filed their pre-answer response on June 10, 2009. Respondents asserted that Applicant had failed to exhaust his second claim in the state court and that the claim was procedurally defaulted as a result. Applicant did not file a reply.

On July 15, 2009, Senior Judge Zita L. Weinshienk entered an order dismissing Applicant's second claim as procedurally defaulted. Finding that Applicant's first claim had been exhausted in the state courts, she ordered Claim One drawn to a district judge and to a magistrate judge.

II.     Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the Applicant's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because Applicant filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the Applicant argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

3

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

>       A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from
> [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669
> [(10th Cir. 2006)] (internal quotation marks and brackets
> omitted) (quoting *Williams*, 529 U.S. at 405). "The word
> 'contrary' is commonly understood to mean 'diametrically
> different,' 'opposite in character or nature,' or 'mutually
> opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
>       A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts. *Id*. at
> 407-08. Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the Applicant's claims." *Id*.

III.   Discussion

Applicant's only remaining claim is his first claim. Respondents assert that claim one has two sub-parts: first, Applicant asserts that the trial court erred in denying his motion to suppress evidence allegedly seized from his home in violation of his Fourth

Amendment right; and second, he asserts that the trial court failed to suppress custodial statements allegedly obtained in violation of his Fifth Amendment right.

    A.    Claim 1(a)

In this claim, Applicant alleges that "[t]he trial court erred in denying the motion to suppress evidence and statements in light of testimony and evidence that the police exceeded the scope" of his consent. Amended Application at 8. Applicant's counsel filed a motion to suppress statements and evidence in the state courts, and a hearing on the motion was held on May 3, 2006. *See* Docket No. 11 at Ex. B, p. 8. At the hearing, law enforcement officers testified that they initially contacted Applicant because they were trying to locate his son, Chris Wieberg. *Id.* Applicant signed a consent form allowing the officers to search his house for the explicit purpose of looking for Chris Wieberg. *Id.* Applicant was then asked to consent to the search of his home for drugs, and Applicant was later questioned by the police regarding drugs found in his home. *Id.* at 8-12. After the hearing, the trial court denied the motion to suppress Applicant's statements to the police and evidence found during the warrantless search. Respondents assert that Applicant's Fourth Amendment claim has been litigated in the state courts and, therefore, that Applicant has already been afforded a full and fair opportunity to argue this claim. *See* Docket No. 22 at 7.

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976). "The purpose of the exclusionary rule is not to redress the injury to the . . . victim . . . . Instead, the rule's

prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). Although habeas review is generally available for constitutional violations, *see* 28 U.S.C. § 2254(a), due to the nature of a Fourth Amendment violation and remedy, a federal court's review is limited for alleged Fourth Amendment Violations. *See Stone*, 428 U.S. at 494. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* This limitation on federal habeas corpus review is grounded on the determination that the purposes behind the exclusionary rule do not require that it be applied during federal habeas review. *Id.* The Supreme Court noted that, in the federal habeas corpus context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.*

Although the Supreme Court has not set forth a precise meaning of the phrase "opportunity for full and fair litigation," the Tenth Circuit has determined that it:

> includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim. It also include the full and fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293 (1963)]. Furthermore, it contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards.

*Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). "Thus, a federal court is not precluded from considering Fourth Amendment claims in habeas corpus

proceedings where the state court willfully refuses to apply the correct and controlling constitutional standards." *Id.*

As substantiated by the record and as undisputed between the parties, Applicant filed a pre-trial motion to suppress evidence and statements resulting from the warrantless search of his house. The Court held a hearing on that motion on May 3, 2006. *See* Trial Court Transcript, Vol. 5 at p. 47-155. Therefore, the Court first finds that the state court proceedings sufficed to provide Applicant with an opportunity for full and fair litigation of this claim. *Gamble*, 583 F.2d at 1165. Further, Applicant has pointed to no authority mandating reversal but ignored by the state court, and this Court has found none. *See id*. Finally, while the Colorado state courts looked to both state and federal case law in making their decisions on Applicant's allegations, the rulings in the cases that were cited are solidly based in Fourth Amendment precedent as set forth by the United States Supreme Court. *See* Trial Court Transcript, Vol. 5 at p. 149-55; Docket No. 4 at Ex. B, p. 24-26. Under this precedent, the Colorado Court of Appeals proceeded to determine that, based on the entire record before it, there was no constitutional concern present with regard to the warrantless search of Applicant's house.

Applicant has failed to present any well-pled facts or any facts at all from which it can be inferred that the appellate court failed to recognize or willfully refused to apply the correct and controlling constitutional standards in this regard, and no such evidence is apparent from the record. *See Gamble*, 583 F.2d at 1165. Applicant merely disagrees with the result, and would like this Court to reconsider these issues *de novo*.

However, that is not the Court's function nor an appropriate review to be undertaken in a federal habeas case. Accordingly, Applicant is not entitled to federal habeas review of his Fourth Amendment claim, and the Court finds that claim 1(a) must be dismissed.

    B.    Claim 1(b)

In this claim, Applicant asserts that the trial court erred in denying the motion to suppress statements he made to police officers at the jail, in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Docket No. 4 at 11. He asserts that he was "never informed that he would be questioned about drug possession, drug sales, or drugs allegedly found in [his] residence. Mr. Wieberg waived his Miranda rights solely for the purposes of agreeing to discuss his son Chris." *Id.* Therefore, he argues that "the police exceeded the scope of Mr. Wieberg's limited consent to speak with him about his son Chris, consequently, his statements regarding drug possession, drug sales, and the drugs allegedly found in [his] residence should have been suppressed under the doctrine of 'fruit of the poisonous tree.'" *Id.* at 12.

The Colorado Court of Appeals considered this issue and determined the following:

> Defendant also contends the trial court erred in concluding that the waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), was valid. We again disagree.
>
> In reviewing a trial court's determination of the validity of a *Miranda* waiver, we defer to the trial court's findings of fact if supported by the record, but review the legal effect of those facts *de novo*. See *People v. King*, 151 P.3d 594, 597 (Colo. App. 2006). The validity of a *Miranda* waiver involves an examination of the totality of the circumstances. *People v. Mejia-Mendoza*, 965 P.2d 777, 780 (Colo. 1998).

> Defendant argues that he only waived his *Miranda* rights in regard to speaking with the police about his son. He argues that, because he was not told he would be questioned about the drugs found in his home or given another advisement, his waiver was not voluntary, knowing, or intelligent.
>
> However, police officers are not obligated to inform a suspect of the subject matter of an investigation. *People v. Humphrey*, 132 P.3d 352, 356 (Colo. 2006) (citing *Colorado v. Spring*, 479 U.S. 564, 577 (1987)). Such a requirement is beyond the scope of *Miranda*, and "a suspect's awareness of all possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Spring*, 479 U.S. at 577.
>
> The record supports the trial court's findings. The court found defendant was given a form advising him of his rights, which he then read and signed. One of the officers also read the form orally to defendant before he agreed to speak with them. One of the officers told defendant he would speak to him about his son, and the other officer would speak to him about "another issue."
>
> The court concluded that, because the interrogation was one continuous interview and defendant had been read his rights thirty minutes prior to the discussion regarding the drugs in his house, his waiver was valid.
>
> Under the totality of these circumstances, we conclude the trial court correctly determined defendant's waiver was voluntary, knowing, and intelligent. Therefore, we uphold its determination.

Docket No. 4 at Ex. B, p. 26-28.

The Fifth Amendment of the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. For that reason, police must advise suspects of their *Miranda* rights prior to custodial interrogation. *Miranda*, 384 U.S. at 467-68. A defendant's waiver of his *Miranda* rights must be voluntary, knowing and intelligent. *Id.* at 444. In order to be considered voluntary, the Supreme Court has held that a defendant's waiver

must have been the product of a free and deliberate choice and not intimidation, coercion or deception. *See Colorado v. Spring*, 479 U.S. 564, 573 (1987). Also, the defendant must have been fully aware of the right being abandoned and the consequences of the decision to abandon it. *Id.* To determine whether a waiver of *Miranda* rights was valid, a court must consider the totality of the circumstances. *Id.* On federal habeas review, "[t]he validity of a defendant's waiver of his or her Fifth Amendment rights is reviewed *de novo* with the underlying facts reviewed under the clearly erroneous standard." *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002); *see also Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000) (holding that "[a]lthough the ultimate question of whether [the Applicant's *Miranda*] waiver was knowing and intelligent is subject to review under the standards set forth in section 2254(d), any subsidiary factual findings made by the state court are entitled to a presumption of correctness under section 2254(e)." (citations omitted)).

Here, the record supports the state court's conclusion that Applicant's waiver of his *Miranda* rights was knowing, voluntary and intelligent. At the suppression hearing, two police officers testified that prior to Applicant's interview, he was given an oral and written *Miranda* advisement and he freely chose to waive his rights. Trial Court Transcript, Vol. 5 at p. 76-77; 116-117. On the other hand, Applicant testified at the suppression hearing that he could not read the *Miranda* advisement because he did not have his reading glasses and that it was not read to him by the police officers. *Id.* at 133-34. However, after evaluating the testimony of the police officers and of Applicant,

the trial court decided that the testimony of the police officers was more credible, concluding the following:

> I find that the testimony of the investigators is, in fact, more credible . . . . They know the significance of the advisement of rights when someone is in custody. They are very clear that they gave him the form and that Investigator Stoffel, in fact, read it out loud to him, and that investigator - - and both investigators indicated that [Applicant] clearly consented both to speaking with them and answering questions without the presence of an attorney.

Trial Court Transcript, Vol. 5 at p. 153-54. During the hearing on the motion to suppress, the trial court found that Applicant made a knowing, intelligent and voluntary waiver of his *Miranda* rights and that he was questioned only after he waived his *Miranda* rights. The state court's factual findings are presumed correct, unless the applicant produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1). This includes findings on the credibility of a witness. As the Supreme Court has noted, "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Church v. Sullivan*, 942 F.2d 1501,1516 (10th Cir. 1991) (finding that a federal court sitting in habeas review must treat a state court's finding regarding witness credibility as a finding of fact entitled to deference). This Court is bound by the trial court's factual findings that Applicant was advised of his *Miranda* rights prior to the interview. Further, there is no indication that Applicant did not understand "the rights at stake and the consequences of waiving them." *Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004) (citing *Spring*, 479 U.S. at 574-75).

Although Applicant argues that "the police exceeded the scope of [his] limited consent to speak with him about his son," the Court finds that this argument is unavailing. Docket No. 4 at 12. Prior to the interview, Applicant was informed by the police officers that they wanted to talk to him about his son and "another issue." Trial Court Transcript, Vol. 5 at p. 118. In *Colorado v. Spring*, 479 U.S. at 574, the Supreme Court noted that "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." Nor does the Constitution require the police to "supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or standby his rights." *Moran v. Burbine*, 475 U.S. 412, 422 (1986). Instead, a defendant must be explained his "basic rights, which is all that is required." *United States v. Hernandez*, 93 F.3d 1493, 1503 (10th Cir. 1996) (finding that "[a] defendant need not be advised of every possible consequence of a waiver of the Fifth Amendment privilege.").

In this case, the record demonstrates that Applicant was provided a *Miranda* advisement prior to any questioning taking place. Further, at the suppression hearing, the police officers testified that there was no break in between the time when Applicant was questioned about his son and when he was questioned about drugs found in his home. Trial Court Transcript, Vol. 5 at p. 94; p. 119-20. Applicant has presented no argument demonstrating that he was unable to discontinue the interview with police once they began questioning him about drugs found in his home. "Once a suspect receives *Miranda* warnings, he 'is free to exercise his own volition in deciding whether

or not to make a statement to the authorities.'" *Oregon v. Elstad*, 470 U.S. 298, 308 (1985). Applicant received a *Miranda* warning, waived his rights, and thereafter made statements to the officers regarding drugs found in his home. Under these facts, the Court finds no *Miranda* violation. At no point did Applicant invoke his right to silence or to counsel, even after the police officers questioned him on matters beyond the location of his son. As such, the totality of the circumstances demonstrates that Applicant knowingly and voluntarily spoke with the police officers. Therefore, the Court finds that the Colorado Court of Appeals' decision was not contrary to or an unreasonable application of *Miranda*. Accordingly, Applicant is not entitled to federal habeas review of his Fifth Amendment claim, and claim 1(b) must be dismissed.

Accordingly, it is ordered that:

1. Applicant Gregory Keith Wieberg's Amended Application For a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 is denied.
2. No certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right.
3. This case is dismissed with prejudice.

DATED December 29, 2010.

              BY THE COURT:

              s/Philip A. Brimmer
              PHILIP A. BRIMMER
              United States District Judge